IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAREY STEWART,

          Petitioner,               No. CIV S-06-2003 JAM CHS P

    vs.

JAMES YATES, et al.,

          Respondents.         FINDINGS AND RECOMMENDATIONS

_____/

I.    INTRODUCTION

        Petitioner Jarey Stewart is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Mr. Stewart attacks his conviction for four counts of violating California Penal Code § 288 and one count of violating California Penal Code § 269 in the Sacramento County Superior Court, Case No. 00F08190.

II.    ISSUES

        Mr. Stewart raises the following claims:

    A.    He was not present for all critical stages of his trial;

    B.    The trial court violated his right to counsel and self representation;

    C.    The trial court violated his right to counsel for sanity phase;

    D.    The county jail violated his attorney-client confidentiality;

1      E.      There was insufficient evidence to support conviction under § 269;

2      F.      The trial court improperly refused his proposed jury instruction;

3      G.      The trial court failed to clarify the insanity instruction;

4      H.      The trial judge improperly imposed consecutive terms;

5      I.      Improper imposition of restitution; and

6      J.      Ineffective assistance of appellate counsel.

7      Upon careful consideration of the record and the applicable law, the undersigned

8 will recommend that Mr. Stewart's petition for habeas corpus relief be denied.

9 III.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

10      A.    <u>Commitment Offense</u>

11        The offenses charged in this matter occurred in September and October 2000. At the time, defendant was living with Evelyn S.

12      and her two daughters, 10-year-old S. and four-year-old M. Defendant was 43 years old and is M.'s father.

13        On September 3, 2000, while Evelyn was away at work, defendant told the girls to take off their clothes while he videotaped them. He

14      continued to videotape the girls as they ran around the house and later took a bath. At one point on the video, defendant tickled S.,

15      touching her breasts and her buttocks. At another point, defendant forced M. to sit on his lap. Both defendant and M. were naked.

16      Defendant told the girls not to tell their mother about the videotape, because it was going to be a surprise for her.

17        On October 1, 2000, Evelyn was again away at work and

18      defendant and S. were in defendant's bedroom watching television. M. was asleep in her room. Defendant told S. to take off her

19      clothes in an "urging" voice and, after she did so, he told her to lie down and began rubbing lotion on her. She obeyed because she

20      was scared and thought defendant might hit or do something else bad to her. Defendant told S. to relax, that he always did this to her

21      mother. Defendant rubbed her arms, legs and chest. Later, defendant began licking her vagina. After about five seconds, S.

22      began pushing defendant's head away. Defendant continued to orally copulate her for two or three minutes; she told him three

23      times to stop.

24        Defendant then told S. to take a shower. She did so and when she stepped out of the shower, she found defendant in the bathroom

25      with her. Defendant told her that if she did not tell her mother what he had done, he would buy her any compact disk she wanted;

26      she declined. Defendant then asked if he could rub lotion on her

again, but she said no.  She then put on her clothes and went to sleep.

The next morning, S. told her mother what had happened.  Evelyn asked defendant what he had done and defendant responded, "It just happened."  Evelyn asked defendant if he wanted to spend the rest of his life in prison and he asked her to "just let [him] go."  Evelyn reported the matter to the police.  While at the police station, Evelyn called defendant at home and asked him about the incident.  The telephone conversation was recorded and later played to the jury.  During the conversation, defendant admitted licking S.'s vagina and telling her that he did this to her mother.  Defendant said this was the only time he did it and that he was ashamed.

Two weeks after calling the police, Evelyn discovered the videotape that defendant had made of the girls on September 3. Portions of the tape were played to the jury.

Defendant was charged with one count of aggravated sexual assault (Pen.Code, § 269, subd. (a)(4)), one count of lewd and lascivious conduct (Pen.Code, § 288, subd. (a)), and one count of aggravated lewd and lascivious conduct (Pen.Code, § 288, subd. (b)) in connection with the October 1 incident with S.  He was charged with two counts of lewd and lascivious conduct in connection with the September 3 taping.  Defendant was also charged with two prior serious felony convictions.

Defendant was found competent to stand trial and entered pleas of not guilty and not guilty by reason of insanity.  During the initial stages of the proceedings, defendant requested to be permitted to represent himself with cocounsel.  The court denied the request. Defendant then elected to represent himself and asked to have counsel appointed in an advisory role.  The court denied this request as well, but ordered stand-by counsel for defendant.

At the guilt phase of the proceedings, defendant testified on his own behalf, explaining that during the September 3 taping, he did not intend to appeal to the sexual desires of either himself or the girls.  Regarding the October 1 incident, defendant testified that he had taken several pain medications that day.  He said he was a nurse and had been trained to give massages.  He massaged S. as he had been trained to do.  After defendant finished the massage, he sat down at the end of the bed.  He then heard Evelyn's voice say "go ahead," which is what she said when they were going to have sex.  Defendant started to orally copulate S., thinking she was Evelyn.  It was not until defendant heard S. say stop that he realized who she was.  He said to S., "You tricked me.  How did you do that?"

Defendant also presented the testimony of a registered nurse regarding the side effects of the various medications defendant claimed to have taken.

3

Defendant was convicted on all counts.  The prior conviction charges were then tried to the jury and were found true.

At the sanity phase, defendant presented the testimony of a nurse at the county jail, who had written a report indicating defendant had obvious psychological problems.  She further clarified on the stand that defendant had "behavioral problems."  Dr. Janice Nakagawa testified that defendant suffered from a "personality disorder," but that defendant knew what he was doing at the time and could tell right from wrong and predict the consequences of his actions.  Dr. Shawn Johnston testified that defendant suffers from a character flaw that causes him to make trouble for others or himself. However, according to Dr. Johnston, none of these character flaws would have kept defendant from understanding what he was doing or from distinguishing right from wrong. However, neither of these psychological experts was qualified to assess the effects on defendant of the several medications that he claimed to have taken at the time of the October 1 incident.

Defendant again testified on his own behalf, indicating that he had signs and symptoms of temporal lobe epilepsy, schizophrenia, and multiple personality complicated by medications.  Defendant testified that he "can sometimes catch glimpses of ghosts when they come" because he is "hypersensitive, kind of like a person with ESP."  He indicated that he has "shown the signs and symptoms of a person with severe depression which may be characterized by bipolar disorder or manic depression."  Defendant considered himself insane in October 2000 because his perception of reality was different from that of others.  He explained that he went into a "dream-like state" about an hour before the molestation as a result of the medications he had taken.

The jury found defendant sane with respect to all five counts.

/////

June 3, 2004 opinion of the California Court of Appeal, Third Appellate District, case no. C040094 at 2-5.  A jury found Mr. Stewart guilty on all counts.  Id. at 5.

      B.      State Appellate and Habeas Corpus Proceedings

In this matter the number and history of appellate review and habeas corpus proceedings are numerous and extremely complicated.  Proceeding chronologically, Mr. Stewart filed a notice of appeal on December 21, 2002.  CT at 1101.  On August 4, 2003, during the pendency of that appeal, Mr. Stewart filed a habeas petition with the California Court of Appeal. Answer, Ex. 4 at 3.  That petition was denied on August 7, 2003.

1    On September 24, 2003, the Sacramento County Superior Court denied a

2  previously filed petition.[1]  On October 17, 2003 Mr. Stewart filed another habeas petition with

3  the California Court of Appeal.  Answer, Ex 6 at 3.  That court denied that petition on October

4  30, 2003.  On June 3, 2004, the California Court of Appeal affirmed Mr. Stewart's convictions

5  but remanded the matter for re-sentencing.  Answer, Ex. 7.  Mr. Stewart then filed a petition with

6  the California Supreme Court on July 23, 2004.

7    On May 13, 2005, after Mr. Stewart was re-sentenced, he filed another notice of

8  appeal.  CT 281-283.  On June 8, 2005 the California Supreme Court denied Mr. Stewart's July

9  23, 2004 petition.  On June 23, 2005, Mr. Stewart filed a writ of habeas corpus in the Sacramento

10 County Superior Court.  That petition was denied on August 16, 2005. Answer, Ex. 7 at 46.

11    On September 12, 2005, Mr. Stewart filed a habeas petition in the California

12 Court of Appeal.  That petition was denied on September 15, 2005.  On February 27, 2006, the

13 California Court of Appeal decided Mr. Stewart's May 13, 2005 appeal.  Answer, Ex. 9 at 8-14.

14    On March 8, 2006, Mr. Stewart filed a petition for review of the California Court

15 of Appeal's February 27, 2006 decision.  Id.  The California Supreme Court denied that petition

16 on May 10, 2006.  Answer, Ex. 10.  Mr. Stewart filed this federal petition on September 7, 2006.

17 IV.  APPLICABLE STANDARD OF HABEAS CORPUS REVIEW

18    A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

19 some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

20 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

21 Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

22 interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

23 Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

24 corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

25

26    [1] Respondent was unable to locate a copy of this petition.

1    (1972).

2           This action is governed by the Antiterrorism and Effective Death Penalty Act of

3    1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

4    1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

5    habeas corpus relief:

6                    An application for a writ of habeas corpus on behalf of a
             person in custody pursuant to the judgment of a State court shall
7            not be granted with respect to any claim that was adjudicated on
             the merits in State court proceedings unless the adjudication of the
8            claim -

9
                     (1) resulted in a decision that was contrary to, or involved
10           an unreasonable application of, clearly established Federal law, as
             determined by the Supreme Court of the United States; or
11

12                   (2) resulted in a decision that was based on an unreasonable
             determination of the facts in light of the evidence presented in the
13           State court proceeding.

14   28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

15   Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).  The

16   court looks to the last reasoned state court decision as the basis for the state court judgment.

17   Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

18   V.      DISCUSSION OF CLAIMS[2]

19           A.      Lack of Presence For All Critical Stages

20                   1)      Description of Claim

21           Mr. Stewart claims the trial court violated his right to be present at all critical

22   _____

23           [2] Respondent argues that several of Mr. Stewart's claims are procedurally defaulted.  A
     reviewing court need not invariably resolve the question of procedural default prior to ruling on
     the merits of a claim where the issue of procedural default turns on difficult questions of state
24   law.  Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997); see also Busby v. Dretke, 359 F.3d
     708, 720 (5th Cir. 2004).  Under the circumstances presented here Mr. Stewart's claims can be
25   resolved more easily by addressing them on their merits.  Accordingly, this report will assume
     that petitioner's claims are not procedurally defaulted.
26

stages of his trial.  Specifically Mr. Stewart claims that on August 13, 2001 the trial court

appointed two psychologists to evaluate him as a result of his plea of not guilty by reason of

insanity.  Petition at 4.  Mr. Stewart claims that on August 14, 2001, the trial court appointed

different psychologists at a hearing outside his presence.  Id.

> 2)     <u>State Court Opinion</u>

> In rejecting this claim, the Sacramento County Superior Court stated:

>> Petitioner fails to cite any authority supporting the proposition that
>> the appointment of one particular psychologist over another, when
>> the first-appointed psychologist is unavailable, for purposes of
>> examination regarding an insanity plea, is such a proceeding at
>> which his presence is required.  Nor does petitioner show that he
>> ever objected to the substitution of the appointment outside of his
>> presence or that he sought appointment of a different psychologist
>> that was denied; not having objected he waived the matter for
>> purposes of appeal, thus his appellate counsel was not ineffective
>> in failing to raise the issue on appeal.  Regardless, petitioner fails
>> to demonstrate any prejudice from the ex parte substitution
>> appointment...

/////

August 16, 2005 opinion of the Sacramento County Superior Court, case no. 05F05709.

> 3)     <u>Applicable Law</u>

> Under federal law, a criminal defendant charged with a felony offense has a

fundamental right to be present at every stage of the trial.  <u>Illinois v. Allen</u>, 397 U.S. 337, 338

(1970).  <u>See</u> <u>also</u> <u>Kentucky v. Stincer</u>, 482 U.S. 730, 745 (1987) ("a defendant is guaranteed the

right to be present at any stage of the criminal proceeding that is critical to its outcome if his

presence would contribute to the fairness of the procedure").  This right derives from the

Confrontation Clause of the Sixth Amendment and the Due Process Clauses of the Fifth and

Fourteenth Amendments.  <u>United States v. Gagnon</u>, 470 U.S. 522, 526 (1985).  However,"th[e]

privilege of presence is not guaranteed 'when presence would be useless, or the benefit but a

shadow.'"  <u>Stincer</u>, 482 U.S. at 745 (quoting <u>Snyder v. Massachusetts</u>, 291 U.S. 97, 106-07

(1934)).  <u>See</u> <u>also</u> <u>Gagnon</u>, 470 U.S. at 527 (defendants' absence did not violate the Due Process

Clause where their presence was not needed to "ensure fundamental fairness" and they could not have added to or gained from being present at the conference); Campbell v. Rice, 408 F.3d 1166, 1172-73 (9th Cir. 2005) (violation of petitioner's due process rights by his exclusion from private in-chambers hearing where the trial court concluded that his attorney did not have a conflict of interest was harmless error). The right to be present, like many other constitutional rights, may be waived. See Gagnon, 470 U.S. at 529; Taylor v. United States, 414 U.S. 17, 19-20 (1973).

The denial of the right to be present is subject to harmless error review. See Rushen v. Spain, 464 U.S. 114, 117 (1983) (defendant's exclusion from ex parte communication between the judge and a juror was a trial error that was subject to harmless error analysis); Hovey v. Ayers, 458 F.3d 892, 903 (9th Cir. 2006) (petitioner's exclusion from competency hearing was harmless); Campbell, 408 F.3d at 1172.

4)      Discussion

It appears from the record that the change in psychologists occurred because the psychologists appointed on August 13 were unavailable. CT at 6. Mr. Stewart fails to show that his presence at the August 14 hearing selecting replacement psychologists would have altered that hearing or his trial in any manner. He does not argue that the previously appointed psychologists would have reached a different conclusion or submitted a different evaluation. He does not argue that the newly appointed psychologists were less qualified or biased in some way. Mr. Stewart fails to demonstrate any prejudice suffered from his absence at this hearing. It appears that Mr. Stewart's presence at the hearing would have been useless. Mr. Stewart is thus not entitled to relief on this claim.

B.      Violation of Constitutional Rights to Counsel And Self Representation

1)      Description of Claim

Mr. Stewart claims that the trial court violated his right to counsel and self representation when it refused to grant his request for self representation, or "co-counsel" status,

for the portion of the trial concerning his prior convictions while maintaining counsel for all other phases of trial.  Petition at 9.

2)      State Court Opinion

The California Court of Appeal, in the June 3, 2004 opinion, rejected this claim finding that:

> Defendant contends that he "filed a motion requesting counsel for all phases of trial, except trial of the allegations of priors."  That motion specified that defendant expressly made no waiver of the right to counsel as to any other phase of the trial.  Defendant contends "[t]he trial court radically transformed [his] request for self-representation or hybrid representation for trial of the priors phase only [] into an order requiring a pro se defense for all trial phases."
>
> . . . .
>
> Although in his motion for substitution of counsel, defendant stated his desire to represent himself only as to the priors, he also stated his dissatisfaction with counsel.  In another filing, defendant declared his intent to represent himself without limitation.  Thus, at the hearing on defendant's motions, the court understandably asked for clarification of defendant's requests.  At that time, defendant gave no indication that he wished to waive counsel only as to the trial of the priors.  He asked for cocounsel status; it was denied.  The court was informed that defendant wanted to represent himself in order to obtain law library privileges.  The court stated it would grant such privileges on a limited basis, without defendant being required to represent himself.  Defendant nevertheless requested self-representation without limitation.  He was thereafter given full advisement of the dangers of self-representation.
>
> Based on the totality of the record, it appears defendant abandoned any thought of limited self-representation, at least at this stage of the proceedings, in favor of total self-representation in order to have full access to the law library and to have control of his defense.  There was no denial of defendant's right to counsel.

/////

Answer, Lodged Doc. 2 at 8-11 (emphasis in original).

3)      Applicable Law

The Sixth Amendment provides that "the accused shall enjoy the right ... to have

1  the Assistance of Counsel for his defense." U.S. Const. amend. VI. In felony cases, a criminal

2  defendant is entitled to be represented by counsel at all critical stages of the prosecution,

3  including sentencing. See Mempa v. Rhay, 389 U.S. 128, 134-37 (1967). In Faretta v.

4  California, 422 U.S. 832 (1975), the United States Supreme Court held that a criminal defendant

5  has a constitutional right to proceed pro se. In making its ruling, the court stated as follows:

> Here, weeks before trial, Faretta clearly and
> unequivocally declared to the trial judge that he
> wanted to represent himself and did not want
> counsel. The record affirmatively shows that Faretta
> was literate, competent, and understanding, and that
> he was voluntarily exercising his informed free will.
> The trial judge had warned Faretta that he thought it
> was a mistake not to accept the assistance of
> counsel, and that Faretta would be required to
> follow all the 'ground rules' of trial procedure. We
> need make no assessment of how well or poorly
> Faretta had mastered the intricacies of the hearsay
> rule and the California code provisions that govern
> challenges of potential jurors on voir dire. For his
> technical legal knowledge, as such, was not relevant
> to an assessment of his knowing exercise of the
> right to defend himself.

15  Id., at 835. Faretta articulates what the Sixth Amendment requires for a valid waiver of the right

16  to counsel and is clearly established federal law for purposes of collateral review of state court

17  proceedings. Pursuant to Faretta, a criminal defendant has a Sixth Amendment right to conduct

18  his own defense, provided only that he knowingly and intelligently forgoes his right to counsel

19  and that he is able and willing to abide by rules of procedure and courtroom protocol  Id. at 821.

20  The holding of Faretta is based on "the long-standing recognition of a right of self-representation

21  in federal and most state courts, and on the language, structure, and spirit of the Sixth

22  Amendment." McKaskle v. Wiggins, 465 U.S. 168, 174 (1984). However, "Faretta does not

23  require a trial judge to permit "hybrid" representation" nor does it empower a defendant to

24  "choreograph special appearances by counsel." McKaskle v. Wiggins 465 U.S. 168, 183 (1984).

25  /////

26

4)    Discussion

Mr. Stewart argues that the "trial court radically transformed [his] request for self-representation or hybrid representation for trial of the prior phase only, into an order requiring a pro se defense for all trial phases, by demanding an 'all or nothing' choice." Petition at 9.  However, the constitutional right to competent counsel and the constitutional right to self representation "cannot actively co-exist."  U.S. v. Dujanovic, 486 F.2d 182, 185 (9th Cir. 1973). Once a defendant competently chooses to represent himself that election carries forward unless counsel is expressly requested by the defendant or circumstances suggest appointment.  Arnold v. U.S., 414 F.2d 1056, 1059 (9th Cir. 1969)

On June 29, 2001 Mr. Stewart filed a motion expressly requesting to represent himself for the portion of the trial concerning his prior conviction.  CT 115-122.  As a result of the hearing on that motion Mr. Stewart elected to proceed pro se.  Mr. Stewart does not allege that he did not knowingly and intelligently make that election.  Instead, Mr. Stewart argues that the trial judge impermissibly denied his request for "co-counsel status."  Such a denial does not implicate Mr. Stewart's right to self representation's or his right to the appointment of counsel. Further, Mr. Stewart has no right to status as "co-counsel" or to "hybrid" representation.  Mr Stewart is thus not entitled to relief on this claim.

C.    Violation of Right to Counsel For Sanity Phase

1)    Description of Claim

Mr. Stewart claims that the trial court violated his right to the assistance of counsel when it failed to appoint him counsel during the sanity portion of his trial.  Mr. Stewart claims that after withdrawing a previously entered plea and pleading not guilty by reason of insanity the trial court never responded to his request that a particular attorney be appointed to assist him with the sanity phase of the trial.  Petition at 11.

/////

11

1          2)      State Court Opinion

2          The California Court of Appeal, in the June 3, 2004 opinion, rejected this claim,

3   finding that:

4          Defendant was given an opportunity before the sanity trial to have
           counsel appointed, but he declined.  Defendant contends that he
5          was not harmed by lack of representation at the sanity trial itself,
           but by lack of representation during the preparation for that trial.
6          However, the trial court did not deny defendant's motion for
           counsel.... At that time, it deferred ruling on the motion.  The
7          matter was not brought up again until after defendant was
           convicted.  Where a defendant does not secure a ruling on a point,
8          it is not preserved for appeal.  (*People v. Rowland* (1992) 4 Cal.4th
           238, 259.)  Because defendant failed to pursue his motion and
9          obtain a ruling, he waived any claim of error.

10  Answer, Lodged Doc. 2 at 8-11 (emphasis in original).

11         3)      Applicable Law And Discussion

12         After Mr. Stewart was found guilty, but prior to the beginning of the sanity phase

13  of the trial, he raised this issue with the trial court and the following exchange occurred:

14         THE DEFENDANT: Ground five is defendant's waiver of counsel
           was involuntary, rendering the procedure unlawful and warranting
15         dismissal.

16         THE COURT: You are saying you didn't waive your right to
           counsel properly, or what?  I thought you wanted to represent
17         yourself.

18         THE DEFENDANT: And I specifically informed the court that if I
           was going to represent myself in the guilt phase, I asked for
19         counsel in the sanity phase because of the nature of needing to
           appoint the experts, to have outside people come in, and so forth,
20         and so on.

21         I made an express waiver according to the standards of Roberts
           versus LaVoul (phonetic).  When I did that, Judge Cantil indicated,
22         well, I'm not going to appoint Mr. Marcolini.  He can do that
           voluntarily or you can go to the IDP, but I'm not going to appoint
23         him.

24         I was never appointed an attorney for the sanity phase, which is
           considered a critical phase of the proceedings according to the
25         cases I have cited.

26
                                        12

1       THE COURT: What are you saying, you want Mr. Marcolini to represent you in the sanity phase?

2

3       THE DEFENDANT: No.  What I'm saying, I was never appointed counsel, and then I subsequently had to undergo the psychiatric exams without counsel.  I had reports done without counsel.  I had no advice.

4

5       THE COURT: You weren't entitled to counsel back then.  You were representing yourself.

6

7       THE DEFENDANT: In the guilt phase.  I had to undergo proceedings that were relating to the sanity phase totally unadvised and totally without counsel.

8

9       THE COURT: Okay, we are going to start the sanity phase this week.  Do you want counsel to represent you, or do you want to represent yourself?

10

11      THE DEFENDANT: At this point I have no choice but to represent myself.

12      THE COURT: No.  What do you mean, you have no choice?  You have a choice, if you want an attorney to come in and represent you now.  That's why he is standby counsel.

13

14      THE DEFENDANT: Standby doesn't count for anything.  He doesn't advise the case.  I cite, it's below the Sixth Amendment Constitutional rights standard to only have standby counsel.

15

16      THE COURT: So you are telling me you don't want Mr. Marcolini to come in now and handle the sanity phase?

17

18      THE DEFENDANT: Not at this point, because he can do no more that what I can do.

19  RT 636-38.

20       By Mr. Stewart's own admission he was not denied counsel for the sanity portion

21  of the trial but only that trial judge denied his request for the appointment of specific counsel,

22  specifically Mr. Marcolini, when he originally raised this request.  While the Sixth Amendment

23  affords Mr. Stewart the right to counsel, he cites no authority for his argument that he had the

24  right to specific counsel.  Nevertheless the trial court offered to appoint Mr. Marcolin prior to the

25  sanity phase but Mr. Stewart declined that offer.  The assertion that Mr. Stewart was denied

26

1  counsel for the sanity portion of his trial is clearly false.

2          With respect to his claim that Mr. Stewart "had to undergo proceedings that were

3  relating to the sanity phase totally unadvised and totally without counsel" a defendant who

4  intelligently and voluntarily waives their right to counsel and elects to proceed pro se "will not

5  later be heard to complain that his Sixth Amendment rights have been impaired." Watts v. U.S.

6  273 F.2d 10, 12 (9th Cir. 1960).  Though the trial court appointed standby counsel for the entire

7  trial, on more than one occasion Mr. Stewart knowingly and intelligently waived his right to

8  counsel.  RT at 1045.  He cannot now seek habeas relief because he erred in doing so.  Mr.

9  Stewart is not entitled to relief on this claim.

10        D.      Interference With Attorney-Client Confidentiality

11                1)      Description of Claim

12          Mr. Stewart claims his federal due process rights were violated by a violation of

13  his attorney-client confidentiality.  Petition at 12.  Mr. Stewart provides no facts or arguments

14  other than this assertion.  Respondent believes this claim is related to a claim raised in the

15  Sacramento County Superior Court.

16                2)      State Court Opinion

17          In a petition to the Sacramento County Superior Court, Mr. Stewart argued that a

18  law librarian unlawfully confiscated his entire legal file and failed to return it to him.  Mr.

19  Stewart argued that this violated his "attorney-client confidentiality."  That court stated that:

20              Petitioner admits that a hearing on the matter took place on
                September 10, 2001.  The reporter's transcript for that hearing
21              indicates that the trial court entertained a motion to dismiss the
                prosecution based on this allegation against the law librarian.  The
22              law librarian testified at the hearing, that petitioner possessed an
                excess of legal materials and supplies, as well as contraband
23              consisting of binders containing metal.  The law librarian testified
                that he took possession of the materials, contacted petitioner's
24              investigator, and eventually gave the investigator all the papers
                that were inside of petitioner's folders but kept the contraband.
25              The trial court denied the motion to dismiss, and ordered the
                folders returned to petitioner with the metal removed from them.

26

                                            14

> Petitioner makes no claim that the trial court erred in denying the motion to dismiss on this ground, nor does petitioner indicate in [a] way how the trial court's ruling was erroneous.  As such, petitioner does not establish that appellate counsel was ineffective in failing to raise this claim on appeal.  Nor does petitioner set forth a prima facie case for relief in any event, requiring denial of the claim (In re Bower (1985) 38 Cal.3d 865).

August 16, 2005, opinion of the Sacramento County Superior Court, case no. 05F05709 at 2.

        3)      Applicable Law And Discussion

Mr. Stewart provides no facts or analysis to support his mere allegations. Without such it is impossible to evaluate the merits of this claim.  As a result this claim is vague and conclusory and should be rejected on that basis.  See Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)) ("'[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief'").

Nevertheless, even when analyzed on the merits and assuming the facts raised in the Superior Court are related to this claim, Mr. Stewart's claim is without merit.  There is no showing that the actions of the law librarian were not for a legitimate purpose or that Mr. Stewart suffered any prejudice as a result of those actions.  Mr. Stewart is not entitled to relief on this claim.

    E.    Insufficient Evidence

        1)      Description of Claim

Mr. Stewart claims there was insufficient evidence to support a conviction for violation of California Penal Code Section 269, Aggravated Sexual Assault of a Child.  Petition at 13.  Specifically Mr. Stewart claims that there was "lack of testimony that defendant ever touched [the victim's] 'sexual organ.'" Id.

        2)      State Court Opinion

In rejecting this argument, the Sacramento County Superior Court stated:

> Penal Code § 269 charge, constituting Count One, was based on Penal Code § 288a oral copulation violation.  Penal Code §

288a(a) defines "oral copulation" as "the act of copulating the mouth of one person with the sexual organ or anus of another person." This has been construed broadly, as including any contact of the mouth with the genitals of the other person (People v. Catelli (1991) 227 Cal.App.3d 1434). Petitioner fails to show that his own testimony at trial did not, in fact, admit the act of copulating his mouth with the sexual organ, being the external genitalia, of the victim. As such, petitioner does not establish that appellate counsel was ineffective in failing to raise this claim on appeal. Nor does petitioner set forth a prima facie case for relief in any event, requiring denial of the claim (In re Bower (1985) 38 Cal.3d 865).

/////

August 16, 2005, opinion of the Sacramento County Superior Court, case no. 05F05709 at 3.

        3)     Applicable Law

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). See also Prantil v. State of Cal., 843 F.2d 314, 316 (9th Cir. 1988). "[T]he dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 318). "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). In order to grant the writ, the federal habeas court must find that the decision of the state court reflected an objectively unreasonable application of Jackson and Winship to the facts of the case. Id. at 1275 & n.13.

The court must review the entire record when the sufficiency of the evidence is

1  challenged in habeas proceedings.  Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985),

2  vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is

3  the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw

4  reasonable inferences from basic facts to ultimate facts."  Jackson, 443 U.S. at 319.  If the trier of

5  fact could draw conflicting inferences from the evidence, the court in its review will assign the

6  inference that favors conviction.  McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994).  The

7  relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether

8  the jury could reasonably arrive at its verdict.  United States v. Mares, 940 F.2d 455, 458 (9th

9  Cir. 1991).  Thus, "[t]he question is not whether we are personally convinced beyond a

10  reasonable doubt" but rather "whether rational jurors could reach the conclusion that these jurors

11  reached."  Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).  The federal habeas court

12  determines sufficiency of the evidence in reference to the substantive elements of the criminal

13  offense as defined by state law.  Jackson, 443 U.S. at 324 n.16; Chein, 373 F.3d at 983.

14       4)    Discussion

15      At Mr. Stewart's trial the victim testified that he "licked" her "on [her] vagina."

16  RT 206-07.  Mr. Stewart testified that "she was kind of relaxing, I suppose, and I started to orally

17  copulate her."  Id. at 394.  Mr. Stewart went on to claim that this oral copulation only involved

18  the area near the victims panty line.  Id.  However, a rational juror could have found the victim's

19  testimony more credible than Mr. Stewart's and concluded that he violated § 269.  Mr. Stewart is

20  therefore not entitled to relief on this claim.

21  /////

22      F.    Refusal to Instruct Jury on Proposed Jury Instruction

23      1)    Description of Claim

24      Mr. Stewart claims the trial court violated his right to due process by refusing to

25  modify CALJIC No. 4.35 to include the words "delusion and its affects must be judged as real."

26

1  Petition at 14-15.  Mr. Stewart claims this refusal undermined his mistake of fact defense.  Id. at

2  15.

3       2)  <u>State Court Opinion</u>

4       In rejecting this claim, the California Court of Appeal stated:

5      At any rate, any error in failing to revise the mistake-of-fact
6  instruction was harmless.  (See *People v. Falsetta, supra*, 21
    Cal.4th at pp 924-925; *People v. Watson* (1956) 46 Cal.2d 818,
7  826.)  It is undisputed that defendant orally copulated S.S.  There
    is also evidence of defendant's immediate consciousness of guilt.
    He tried to bribe S.S. not to inform her mother, and when
8  confronted by Evelyn the next morning, said it "Just happened"
    and asked her to "just let [him] go."  Defendant made no mention
9  of his purported delusion in his telephone conversation with
    Evelyn later that day, but instead expressed his shame.  There was
10  also the videotape, which demonstrated defendant's sexual interest
    in the children a month earlier.  Furthermore, defendant argued to
11  the jury that the combination of drugs caused a delusion within the
    meaning of the mistake-of-fact instruction.  Although argument to
12  the jury is not a substitute for a proper jury instruction, such
    argument is further support for a finding of harmless error.
13  (*People v. Fudge* (1994) 7 Cal.4th 1075, 1111.)

14      Defendant's theory was that the combination of medications he
    supposedly took prior to the offenses induced a delusion that lasted
15  only briefly.  Shortly after the offense, defendant was able to think
    clearly enough to attempt to bribe the victim.  The only expert
16  testimony presented by defendant on the point was from a
    registered nurse, who recounted certain potential side effects from
17  medications.  However, the witness said nothing about whether
    those effects could be experienced in such a brief fashion.  Based
18  on the totality of the evidence, it is not reasonably probable the
    jury would have reached a different conclusion if the court had
19  modified the mistake-of-fact instruction to include reference to a
    temporary delusion.

20  /////

21  August 16, 2005, opinion of the Sacramento County Superior Court, case no. 05F05709 at 22.

22       3)  <u>Applicable Law</u>

23      "[A] defendant is entitled to have the judge instruct the jury on his theory of

24  defense, provided that it is supported by law and has some foundation in the evidence.  <u>U.S. v.</u>

25  <u>Crandall</u> 525 F.3d 907, 911 (9th Cir. 2008) (quoting <u>United States v. Fejes</u>, 232 F.3d 696, 702

26

(9th Cir.2000)).  However, a state court's determination of whether a requested instruction is allowed under state law cannot form the basis for federal habeas relief.  Estelle, 502 U.S. at 67-68; see also Menendez v. Terhune 422 F.3d 1012, 1029 (9th Cir. 2005).  Nevertheless a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process."  Hines v. Enomoto, 658 F.2d 667, 672 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980));  See also Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988) (To prevail on such a claim petitioner must demonstrate that an erroneous instruction "so infected the entire trial that the resulting conviction violates due process.")  The analysis for determining whether a trial is "so infected with unfairness" as to rise to the level of a due process violation is similar to the analysis used in determining, under Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), whether an error had "a substantial and injurious effect" on the outcome.  See Thomas v. Hubbard, 273 F.3d 1164, 1179 (9th Cir. 2001), overruled on other grounds by Payton v. Woodford, 299 F.3d 815, 828 n.11 (9th Cir. 2002).  Where, as here, the challenge is a failure to give an instruction, the petitioner's burden is "especially heavy," because "[a]n omission, or an incomplete instruction is less likely to be prejudicial than a misstatement of the law."  Henderson v. Kibbe, 431 U.S. 145, 155 (1977).  See also Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997).

        4)    Discussion

        Mr. Stewart was allowed to fully present his defense of "delusion" to the jury.  Mr. Stewart then requested the trial judge issue instruction CALJIC No. 4.35 and the trial judge granted his request.  Petition at 14.  There is no argument or evidence that the trial court's refusal to modify the instruction "so infected [the trial] with unfairness" or had "a substantial and injurious effect" on the outcome of the trial.  Mr. Stewart is only arguing that he had a right to his specific requested instruction and the trial court erred in denying that request.  As pointed out

1 │ by the California Court of Appeal, any error in refusing to modify CALJIC No. 4.35 is at worst

2 │ harmless error.  Mr. Stewart is therefore not entitled to relief on this claim.

3 │        G.       Failure to Clarify the Insanity Instruction

4 │             1)       Description of Claim

5 │         Mr. Stewart claims that the trial court was obligated to modify the CALJIC No.

6 │ 4.02 jury instruction.  Petition at 6.  Specifically, Mr. Stewart claims the trial court should have

7 │ instructed the jury that a defendant "must be found insane if he did not know the act was morally

8 │ wrong."  Id.

9 │             2)       State Court Opinion

10 │         In rejecting this claim the California Court of Appeal stated:

> The foregoing cases make clear that "wrong" withing the meaning
> of penal code section 25, subdivision (b), and CALJIC No. 4.02
> can be either a legal wrong or a moral wrong.  A defendant who is
> incapable of understanding that his acts are legally or morally
> wrong is insane for purposes of the Penal Code.  However,
> defendant cites no case supporting his claim that the court erred in
> failing to set this forth in the instruction.  The instruction as given
> was neutral in this regard.
>
> However, assuming a trial court is required to give such an
> instruction in an appropriate case, this is not such a case.  The
> defense here was not that defendant did not understand that his
> oral copulation of S.S. was morally wrong.  Rather, defendant
> claimed he did not know it was S.S. he was copulating.
> Defendant's theory was the he knew he was orally copulating
> someone and presumably knew that orally copulating a minor was
> both legally and morally wrong, but thought he was with Evelyn at
> the time.  Thus, defendant's proposed modification of the
> instruction had no bearing on this case and was properly rejected
> by the trial court.

21 │ /////

22 │ August 16, 2005, opinion of the Sacramento County Superior Court, case no. 05F05709 at 22.

23 │             3)       Applicable Law And Discussion

24 │         As noted previously, to be entitled to relief on this claim Mr. Stewart must show

25 │ that the trial court's failure to grant his proposed instruction so infected the entire trial that his

26 │

1   conviction violated his right to due process.  Hines, 658 F.2d at 672 (citing Quigg, 616 F.2d at

2   1107);  See also Prantil, 843 F.2d at 317 (To prevail on such a claim petitioner must demonstrate

3   that an erroneous instruction "so infected the entire trial that the resulting conviction violates due

4   process.") The test is whether a trial is "so infected with unfairness" as to rise to the level of a

5   due process violation is similar to the analysis used in determining, under Brecht v. Abrahamson,

6   507 U.S. 619, 623 (1993), whether an error had "a substantial and injurious effect" on the

7   outcome.  See Hubbard, 273 F.3d at 1179, overruled on other grounds by Woodford, 299 F.3d at

8   828 n.11.

9           Here Mr. Stewart has not met his burden.  The trial court's refusal to grant his

10  requested modification in no way infected his trial with unfairness.  While Mr. Stewart preferred

11  his proposed instruction, the trial court issued a pattern jury instruction that was in no way unfair

12  or injurious to his trial.  Indeed, the proposed modification requested by Mr. Stewart would have

13  conflicted with and undermined his "delusion" defense.  Mr. Stewart is therefore not entitled to

14  relief on this claim.

15          H.      Improper Imposition of Consecutive Terms

16                  1)      Description of Claims

17          Mr. Stewart claims the trial court violated Blakely v. Washington, 542 U.S. 296

18  (2004), and Apprendi v. New Jersey, 530 U.S. 466 (2000), by imposing sentence enhancements

19  and consecutive terms.  Petition at 19.

20                  2)      State Court Opinion

21          The February 27, 2006 opinion of the California Court of Appeal provides both

22  the factual history and that court's rejection of this claim.

23          A jury convicted defendant Jarey Stewart of three counts of lewd
            and lascivious conduct (Pen. Code, § 288, subd. (a); undesignated
24          statutory references are to the Penal Code), one count of
            aggravated lewd and lascivious conduct (§ 288, subd. (b)(1)), and
25          one count of aggravated sexual assault (§ 269, subd. (a)(4)).  He

26                                              21

was sentenced under both the one strike law (§ 667.61, subd. (b)) and the three strikes law (§ 667, subds.(b)-(i)) to three consecutive indeterminate terms of 15 years to life, each tripled to 45 years to life (§ 667, subd. (e)(2)(A)(i)).  A fourth indeterminate term of 15 years to life, tripled to 45 years to life, was ordered to be served concurrently.  Sentence for the remaining offense was stayed pursuant to section 654.  He also received determinate terms of five years for a prior serious felony conviction (§ 667, subd. (a)) and one year for a prior prison term (§ 667.5, subd. (b)).  Defendant's aggregate term was thus 135 years to life, plus six years. (*People v. Stewart* (2004) 119 Cal.App.4th 163, 166 (*Stewart I*).)

Defendant appealed to this court claiming, among other things, sentencing errors.  We applied the rule of *People v. Jones* (2001) 25 Cal.4th 98 (*Jones* ): " '[F]or purposes of ... section 667.61, subdivision (g), sex offenses occurred on a "single occasion" if they were committed in close temporal and spatial proximity.' " (*Jones, supra,* at p. 107; *Stewart I, supra,* 119 Cal.App.4th at p. 174.) *Jones* explained that its rule "should result in a *single* life sentence, rather than *three* consecutive life sentences, for a sequence of sexual assaults by defendant against one victim that occurred during an uninterrupted time frame and in a single location." (*Jones, supra,* at p. 107.)

In *Stewart I, supra,* 119 Cal.App.4th 163, this court concluded that under the *Jones* rule (*Jones, supra,* 25 Cal.4th 98), "defendant may be sentenced to only one life term under ... section 667.61 for the three offenses committed against S. on October 1 [counts one, two, and three].  Terms for the other offenses must be imposed as authorized elsewhere in the Penal Code.  Of course, while the trial court here imposed three life terms for the three October 1 offenses, one term was stayed and the other was run concurrently.  Thus, there will be no net effect on defendant's aggregate sentence."  (*Stewart I, supra,* 119 Cal.App.4th at pp. 174-175.)

On remand, defendant appeared in propria persona and made a motion for a new trial.  The trial court declined to rule on the motion on the ground that it had previously been heard and denied.

The trial court then resentenced defendant on counts one, two, and three.  On count one (aggravated sexual assault; § 269, subd. (a)(4)), the court imposed a three strikes sentence of 45 years to life, stayed pursuant to section 654.  On count two (forcible lewd acts with a child; § 288, subd. (b)(1)), the court imposed a one-strike sentence tripled to 45 years to life.  On count three (lewd acts with a child; § 288, subd. (a)), the court imposed a six-year middle term stayed pursuant to section 654.  The remaining counts were unchanged.  Defendant was awarded 446 days of custody credit and 66 days of conduct credit.  He was ordered to make restitution to the restitution fund and to pay a $10,000 restitution

fine (§ 1202.4) and a $10,000 restitution fine suspended unless parole is revoked (§ 1202.45).

We appointed counsel to represent defendant on appeal.  Counsel filed an opening brief that sets forth the facts of the case and requests this court to review the record and determine whether there are any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436.)  Defendant was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing of the opening brief.

Defendant filed a supplemental brief contending the trial court violated his federal and state due process rights by failing to consider and rule on his motion for a new trial or dismissal under sections 1181 and 1200.  However, "we specifically affirmed the judgment of conviction in the prior appeal and remanded only for resentencing.  Defendant cannot now be permitted to make a direct attack upon his convictions. [Citation.]" (*People v. Webb* (1986) 186 Cal.App.3d 401, 410.)  Defendant's motion for dismissal or a new trial was just that sort of attack.

Applying the Sixth Amendment to the United States Constitution, the United States Supreme Court held in *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435] (*Apprendi*) that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be tried to a jury and proved beyond a reasonable doubt.  (*Id.* at p. 490 [147 L.Ed.2d at p. 455].)  For this purpose, the statutory maximum is the maximum sentence that a court could impose based solely on facts reflected by a jury's verdict or admitted by the defendant.  Thus, when a sentencing court's authority to impose an enhanced sentence depends upon additional fact findings, there is a right to a jury trial and proof beyond a reasonable doubt on the additional facts. (*Blakely v. Washington* (2004) 542 U.S. 296, 303, 304 [159 L.Ed.2d 403, 413-414] (*Blakely* ).)

The United States Supreme Court later emphasized: "If the [sentencing scheme] could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment.  We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range.  [Citations.] ... For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant."  (*United States v. Booker* (2005) 543 U.S. 220, 233 [125 S.Ct. 738] (*Booker* ).)

Citing *Apprendi, supra,* 530 U.S. 466, and *Blakely, supra,* 542 U.S. 496, defendant contends the restitution order must be stricken because it was based on facts not submitted to the jury and proved beyond a reasonable doubt, thus depriving defendant of the constitutional right to a jury trial on facts legally essential to the

sentence.

However, for reasons set forth in its recent opinion, the California Supreme Court has held, "the judicial fact finding that occurs when a judge exercises discretion to impose an upper term sentence ... under California law" does "not violate a defendant's right to a jury trial under the principles set forth in *Apprendi, Blakely,* and *Booker.*"  (*People v. Black* (2005) 35 Cal.4th 1238, 1244, 1254 (*Black* ).)

The *Apprendi-Blakely-Booker* principles do not entitle defendant to a jury determination of restitution.  The California Constitution requires the payment of restitution and imposes no maximum on the amount that can be ordered.  (Cal. Const., art. I, § 28, subd. (b).)  Because the trial court's restitution order did not exceed any constitutional or statutory maximum, defendant's jury trial right was not violated.

Defendant contends part V of our opinion in *Stewart I* is "fundamentally flawed."  However, our Supreme Court denied defendant's petition for review of *Stewart I* in September 2004.  (*Stewart I, supra,* 119 Cal.App.4th at p. 175.)  Our opinion is now final.

Defendant contends the imposition of one-strike sentences on counts two, four, and five is unconstitutional and violates double jeopardy under *Apprendi, supra,* 530 U.S. 466.  However, the decision whether to sentence counts under the one-strike scheme is analogous to the decision whether to sentence consecutively or concurrently.  "Both are sentencing decisions made by the judge after the jury has made the factual findings necessary to subject the defendant to the statutory maximum sentence on each offense, and neither implicates the defendant's right to a jury trial on facts that are the functional equivalent of elements of an offense." (*People v. Black, supra,* 35 Cal.4th at p. 1264.)

Having undertaken an examination of the entire record, we find no arguable error that would result in a disposition more favorable to defendant.

/////

3)  Applicable Law

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to a trial by jury, applicable to state criminal proceedings through the Fourteenth Amendment.  Duncan v. Louisiana, 391 U.S. 145, 149-150 (1968).  In Apprendi v. New Jersey, 530 U.S. 466 (2000), the United States Supreme Court clarified a defendant's rights under the Sixth Amendment by extending the right to trial by jury to any fact finding used to

24

1   make enhanced sentencing determinations above the statutory maximum for an offense.  "Other

2   than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the

3   prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable

4   doubt."  Apprendi, 530 U.S. at 488-90.  Subsequently, the court held in Blakely v. Washington

5   that "the statutory maximum for Apprendi purposes is the maximum sentence a judge may

6   impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.

7   Blakely, 542 U.S. at 303 (2005).  Next, the court applied Apprendi and Blakely to invalidate the

8   then-mandatory Federal Sentencing Guidelines.  United States v. Booker, 543 U.S. 220, 243-244

9   (2005).

10          In Cunningham v. California, the United States Supreme Court, citing Apprendi,

11  Blakely, and Booker, held that California's Determinate Sentencing Law violated a defendant's

12  right to a jury trial to the extent it permitted a trial court to impose an upper term based on facts

13  found by the court rather than the jury.  Cunningham v. California, 549 U.S. 270 (2007).

14  Cunningham had not yet been decided when Mr. Stewart's conviction became final.  However,

15  the Ninth Circuit has determined that Cunningham, unlike Apprendi, Blakely, and Booker, did

16  not announce a new rule of constitutional law and therefore should be applied retroactively on

17  collateral review.  Butler v. Curry, 528 F.3d 624, 639 (9th Cir. 2008).

18          4)      Discussion

19          The California Court of Appeal properly cited Blakely, but ultimately rejected

20  Mr. Stewart's claim, citing then-binding precedent of the California Supreme Court in People v.

21  Black, 35 Cal.4th 1238 (2005).  In Butler, the Ninth Circuit determined that the legal precedents

22  of Apprendi, Blakely, and Booker compelled the conclusion that California's Determinate

23  Sentencing Law was unconstitutional even prior to the Cunningham decision.  Butler, 528 F.3d

24  at 634-35 (finding that the California Supreme Court's decision in Black was contrary to the

25  clearly established law of the Supreme Court as set forth in Apprendi, Blakely, and Booker).

26

1 Apprendi, Blakely, and Booker were all decided prior to the time Mr. Stewart's conviction

2 became final.  Nevertheless, though Black has been overruled, the decision of the California

3 Court of Appeal was congruent with clearly established federal law.

4           Under California Penal Code § 667.61(b) Mr. Stewart's conviction under multiple

5 counts mandated a sentence of 15-years to life.  Under California Penal Code § 667(e)(2)(A)(i),

6 the 15-year minimum term for each count could be tripled as a result of Mr. Stewart's two prior

7 felony convictions.  RT at 1097-1099.  Those priors were proven to the jury.  RT at 1034.  There

8 is no violation of clearly established federal law as outlined by Blakely or Apprendi therefore

9 because Mr. Stewart's sentence was enhanced as a result of prior convictions proven to a jury.

10 Mr. Stewart is thus not entitled to relief on this claim.

11           To the extent that Mr. Stewart is arguing that the trial court violated federal law

12 by imposing consecutive sentences, as opposed to the imposition of an upper term, such a claim

13 is beyond the scope of federal habeas review.  See Cacoperdo v. Demosthenes, 37 F.3d 504, 507

14 (9th Cir.1994) ("The decision whether to impose sentences concurrently or consecutively is a

15 matter of state criminal procedure and is not within the purview of federal habeas corpus.");

16 accord Souch v. Schaivo, 289 F.3d 616, 623 (9th Cir.2002) ("Because the trial court actually had

17 *absolute discretion* to impose either consecutive or concurrent sentences[,] ... neither an alleged

18 abuse of discretion by the trial court in choosing consecutive sentences, nor the trial court's

19 alleged failure to list reasons for imposing consecutive sentences, can form the basis for federal

20 habeas relief.") (italics in original).

21      I.      Improper Imposition of Restitution

22           1)      Description of Claim

23           Mr. Stewart claims the trial court violated his Sixth Amendment rights as a result

24 of the improper imposition of restitution.  Petition at 20.  Specifically Mr. Stewart argues that the

25 imposition of restitution, without submission to a jury, violated Apprendi and Blakely.  Id.

26

2)      Applicable Law And Discussion

When previously faced with similar arguments, in 28 U.S.C. § 2255 matters, federal courts have consistently held a federal inmate cannot challenge a restitution order because the order does not affect the duration of the inmate's custody.  See, e.g., United States v. Thiele, 314 F.3d 399, 400 (9th Cir. 2002) ("Claims for other types of relief, such as relief from a restitution order, cannot be brought in a § 2255 motion, whether or not the motion also contains cognizable claims for release from custody."), cert. denied, 540 U.S. 839 (2003); United States v. Kramer, 195 F.3d 1129, 1130 (9th Cir. 1999) ("[B]y its plain terms, § 2255 is available only to defendants who are in custody and claiming the right to be released.").  By reasonable analogy, this claim is not a cognizable federal habeas corpus claim.

J.      Ineffective Assistance of Appellate Counsel

1)      Description of Claim

Mr. Stewart claims he received ineffective assistance of appellate counsel. Specifically, he argues that his appellate counsel was ineffective for failing to raise on appeal his claims relating to lack of presence at all stages, interference with attorney-client confidentiality, and insufficient evidence.  Petition at 4-13.

2)      Applicable Law

The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  Id. at 687-88.  After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally,

1  competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  In assessing an

2  ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's

3  performance falls within the 'wide range of professional assistance.'"  Kimmelman v. Morrison,

4  477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689).  There is in addition a strong

5  presumption that counsel "exercised acceptable professional judgment in all significant decisions

6  made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

7         Second, a petitioner must establish that he was prejudiced by counsel's deficient

8  performance.  Strickland, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable

9  probability that, but for counsel's unprofessional errors, the result of the proceeding would have

10  been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine

11  confidence in the outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224

12  F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's

13  performance was deficient before examining the prejudice suffered by the defendant as a result

14  of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the

15  ground of lack of sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280

16  F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

17         The Strickland standards apply to appellate counsel as well as trial counsel.

18  Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.

19  1989).  However, an indigent defendant "does not have a constitutional right to compel

20  appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of

21  professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751

22  (1983).  Counsel "must be allowed to decide what issues are to be pressed."  Id.  Otherwise, the

23  ability of counsel to present the client's case in accord with counsel's professional evaluation

24  would be "seriously undermined."  Id.  See also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th

25  Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is

26

1  not even particularly good appellate advocacy.")  There is, of course, no obligation to raise

2  meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a

3  showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing

4  to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to demonstrate prejudice in this

5  context, petitioner must show that, but for appellate counsel's errors, he probably would have

6  prevailed on appeal.  Id. at 1434 n.9.

7           3)    Discussion

8           Mr. Stewart provides no facts or analysis to support his mere allegations.  As a

9  result this claim is vague and conclusory and should be rejected on that basis.  See Jones v.

10  Gomez, 66 F.3d 199, 204 (9th Cir. 1995) (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994))

11  ("'[c]onclusory allegations which are not supported by a statement of specific facts do not

12  warrant habeas relief'").

13           Nevertheless, when analyzed on the merits this claim should also be denied.  The

14  issues Mr. Stewart argues his appellate counsel should have raised may be properly characterized

15  as weak.  His appellate counsel was not deficient for failing to raise these issues.  Further, Mr.

16  Stewart has made no attempt to show that, but for his appellate counsel's errors, he probably

17  would have prevailed on appeal.  Mr. Stewart therefore has not shown that his appellate counsel

18  was deficient or that he was prejudiced by his counsel's actions.  Mr. Stewart is thus not entitled

19  to relief on this claim.

20  VI.    CONCLUSION

21           Accordingly, IT IS HEREBY RECOMMENDED that petitioner's petition for a

22  writ of habeas corpus be denied.

23           These findings and recommendations are submitted to the United States District

24  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

25  days after being served with these findings and recommendations, any party may file written

26

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 3, 2009

_Charlene H. Sorrentino_
CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE